**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**JOSEPH BULLARD and**
**JOYCE BULLARD,**

      Plaintiffs,

      **v.**                               **Case No. 3:07-cv-76–J-16HTS**

**ANHEUSER BUSCH, INC.,**
**a foreign corporation,**

      Defendant.

_____/

**O R D E R**

Before the Court is Defendant's Motion to Dismiss (Dkt. 4)(the "Motion"), Plaintiffs' Response in Opposition thereto (Dkt. 10)(the "Response") and Defendant's unopposed Reply to Plaintiffs' Response (the "Reply") (Dkt. 16).  For the reasons that follow, Defendant's Motion to Dismiss (Dkt. 4) is **GRANTED IN PART and DENIED IN PART** without prejudice to refile upon Plaintiffs' filing of an amended complaint.

**I.**      **Background**

Plaintiffs,  Mr. Joseph Bullard ("Mr. Bullard or "Plaintiff") and Ms. Joyce Bullard, his wife, (collectively, the "Plaintiffs") originally filed suit in state court in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County Florida, Case Number 16-2006-CA-008374 (the "Circuit Court Action"). Citing diversity as grounds for jurisdiction, Defendant, Anheuser Busch Corporation ("Anheuser") removed the Circuit Court Action to this Court on February 2, 2007 (Dkt. 1).  Plaintiffs later filed an Amended Complaint (the "Amended Complaint"), alleging Breach of Contract (Count I), Discharge in violation of Fla. Stat. § 440.205 (Count II), and Fraud (Count III) (Dkt. 2).

Mr. Bullard began working at Anheuser on September 3, 1973.  On or about August 19, 1999, Mr. Bullard injured his lower back when attempting to move a pump in Anheuser's brewery.  As a result of his injury Mr. Bullard underwent two lower back surgeries, one on June 19, 2001 and the other on June 13, 2002.  From June 19, 2001, until Mr. Bullard retired in June of 2003, he remained an Anheuser employee.  During the time that Mr. Bullard was unable to work, he filed for worker's compensation benefits and participated in two proceedings regarding the claims he filed, one on December 4, 2002, and another on June 2, 2003.  The proceedings each resulted in mediation settlement agreements between the parties.

On December 9, 2002, Mr. Bullard was medically released to return to full time, light-duty work; however, he did not return to work because, he alleges, Anheuser failed to provide him with appropriate light duty work, even though it was available and he was capable of performing it.

While working for Anheuser, Mr. Bullard was a member of the Brewery and Soft Drink Workers Conference, USA and Canada, as well as Local Union 947. As a member of these organizations, Mr. Bullard's employment was governed by a collective bargaining agreement (the "CBA").   In addition, while employed at Anheuser, Plaintiffs were provided with health insurance coverage under the Anheuser employee health insurance plan (the "Plan").  The Plan, it is not disputed, is an employee benefit plan as that term is defined under the "Employee Retirement Income Security Act," 29 U.S.C. § 1000 *et seq.,* commonly known as "ERISA."  The Plan appears to be comprised of Article 31, the Health & Welfare Section of the CBA and its attachments, H&W Attachments 1-6 as well as Article 32 (Pension).  The attachments are incorporated by reference into the CBA through CBA Article 31. (Dkt. 4, Ex. A, pp.44-45).

## II.     Standard of Review

For Anheuser to prevail on its Motion under Rule 12(b)(6), Federal Rules of Civil Procedure, it must show beyond all doubt that Plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Hishon v. King & Spaulding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Luckey v. Harris, 860 F.2d 1012, 1016 (11th Cir. 1988).

In general, courts disfavor motions to dismiss and only grant such motions in rare circumstances.  See Gasper v. La. Stadium and Exposition Dist., 577 F.2d 897, 900 (5th Cir. 1978). Therefore, at the motion to dismiss stage, this Court is required to accept all of Plaintiffs' well-pleaded facts as true, and all reasonable inferences are to be construed in the light most favorable to Plaintiffs.  See e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274, n.1 (11th Cir. 1999); Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). Further, a motion to dismiss a complaint must be decided on questions of law and questions of law only.  Kest v. Nathanson, 216 So.2d 233, 235 (Fla. 4th Dist. Ct. App. 1968).

## III.     Discussion

In the Response, Plaintiffs acknowledged that Counts I and III of the Amended Complaint "are preempted by the ERISA statutes . . . . Based on this acquiescence, Counts I and III of the Amended Complaint (Dkt. 4) are **DISMISSED**.

Remaining before the Court is Count II**,** which alleges worker's compensation retaliation in violation of Fla. Stat. § 440.205 (Count II).  Fla. Stat. § 440.205 reads that "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Worker's Compensation Law."

In the Motion, Anheuser argues that Count II should be dismissed because it: 1) is preempted by ERISA; 2) is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"); and, 3) fails to state a cause of action for workers' compensation retaliation under Fla. Stat. § 440.205.

Plaintiffs respond that Count II: 1) is not preempted by ERISA; 2) is not preempted by the LMRA because "none of the allegations of Count II are dependant upon any interpretation of the . . . collective bargaining agreement" (Dkt. 10 at p. 6); and, 3) that Count II does state a cause of action under Fla. Stat. § 440.205.

Anheuser replies that Plaintiffs' argument that their "workers' compensation retaliation claim is not preempted by the [LMRA] is simply incorrect, because consideration of the claim requires an interpretation of the collective bargaining agreement ("CBA") governing [Mr.] Bullard's employment." (Dkt. 16 at p. 1).  In addition, Anheuser replies that Plaintiffs failed to state a claim for retaliatory discharge in violation of Fla. Stat. § 440.205 because Mr. Bullard clearly retired voluntarily.  Anheuser also claims that all claims by Mrs. Bullard must be dismissed from the case because she has no standing to pursue Count II. (Dkt. 16, pp. 3-4).  Because Plaintiffs did not have any opportunity to address this issue, the Court will not address it in this Order.

**ERISA**

Anheuser claims that Count II is preempted by ERISA because:

> At a minimum, the Court would have to examine the Plan to determine whether contrary to Plaintiffs' allegations, they actually forfeited their eligibility for the continuation of their health insurance coverage pursuant to the terms of the Plan.  Moreover, even assuming *arguendo* that [Mr. Bullard] can state a cause of action for workers' compensation retaliation, the Court would need to consider whether or not [Anheuser] can state legitimate business reasons for its actions, which would necessarily include an analysis of the Plan terms.

4

(Dkt. 4 at p. 8).  Plaintiffs claim that Count II does not "relate to ERISA in any manner, and

accordingly, it is not preempted."  (Dkt. 10 at p. 2). Specifically, Plaintiffs claim that:

> Count II further does not allege that [Mr. Bullard] is entitled to benefits under
> the [Plan].  On the contrary, Count II alleges that [Mr. Bullard] is neither
> seeking a determination of his rights under a [sic] ERISA plan, nor is he
> seeking payment of benefits under such a plan. [Mr. Bullard] is simply seeking
> damages under a state law cause of action, and claiming as part of his
> damages, the losses that he and his wife have suffered, including loss of their
> health insurance.

(Dkt. 10 at  p. 3).

As stated above, Fla. Stat. § 440.205 reads that "No employer shall discharge, threaten to

discharge, intimidate, or coerce any employee by reason of such employee's valid claim for

compensation or attempt to claim compensation under the Worker's Compensation Law."

Plaintiffs claim that Anheuser violated this statute in a variety of ways, including by falsely stating

that Plaintiffs had  "forfeited their eligibility for the continuation of their health insurance coverage

under the [Anheuser] employee health insurance plan and that they owed $7,000.00 to [Anheuser]

based upon the past health insurance coverage that had been provided to them since November 15,

2002, in an attempt to force settlement of [Mr. Bullard's] workers' compensation claim during the

mediation conference of June 5, 2003." (Dkt. 2 at p. 11).

ERISA's preemption clause generally provides that ERISA will "supersede any and all State

laws" to the extent that those laws "relate to"any employee benefit plan that is subject to ERISA.

ERISA § 514(a), 29 U.S.C. § 1144(a).  The Supreme Court has observed that the statutory

preemption language is "deliberately expansive" and "conspicuous for its breadth." <u>FMC Corp. V.</u>

<u>Holliday</u>, 498 U.S. 52. 58 (1990).

By its very terms, the preemption clause applies to all state laws that "relate to" an employee

benefit  plan.  The Supreme Court has deemed that this phrase should be given its "broad common-

5

sense meaning." <u>Pilot Life Ins.Co. V. Dedeaux</u>, 481 U.S. 41, 47 (1987).  Thus, a state law relates to an employee benefit plan, "in the normal sense of the phrase, if it has a connection with or reference to such a plan."  <u>Shaw v. Delta Airlines, Inc.</u>, 463 U.S. 85, 96-97 (1983).  The preemption clause is "not limited to state laws specifically designed to affect employee benefit plans."  <u>Pilot Life</u>, 481 U.S. at 47-48 (internal citations omitted).  Despite the breadth of the preemption clause, its application has been limited by courts.  In <u>Shaw</u>, the Supreme Court noted that certain state laws that affect ERISA plans in "too tenuous, remote or peripheral a manner" do not "relate to" plans for purposes of the preemption clause.  <u>Shaw</u>, 463 U.S. at 100 n.21.  Based on this language, a number of laws have withstood preemption challenges because courts have found their connection to ERISA plans too remote.  <u>See, e.g.</u>, <u>Aetna Life Ins. Co. v. Borges</u>, 869 F.2d 142, 147-49 (2d Cir. 1989) (impact of Connecticut's escheat law too remote to require preemption).

As a preliminary matter, the Court notes that it is operating under the assumption that the Plan is subsumed in the CBA and is comprised of Article 31 (Health and Welfare) with its six (6) attachments and Article 32 (Pension).  While Anheuser stated that the "health insurance coverage described by Plaintiffs [is] contained within the CBA," (Dkt. 4 at p. 11) neither party provided the Court with the exact details of the Plan.

Count II is not preempted by ERISA because it does not "relate to" ERISA.  The critical issue in this case is whether Anheuser failed to return Mr. Bullard to work.  Anheuser claims that at the heart of Plaintiffs' worker's compensation retaliation claim is the core allegation of "wrongful deprivation of benefits under an ERISA plan."

Nowhere in the Complaint do Plaintiffs claim that Mr. Bullard was terminated so that Anheuser would not have to provide him with the benefits due him under the Plan.  As the Ninth

Circuit has noted, "A claim does not relate to ERISA, however, when the loss of benefits was a mere consequence of, but not the motivating factor behind, the termination of benefits." Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1405 (9th Cir. 1988); see also Karambelas v. Hughes Aircraft Co., 992 F.2d 971, 974 (9th Cir. 1993).

What Plaintiffs claim is that Mr. Bullard failed to "obtain 10 years of "credited service" with [Anheuser] after his 45th birthday, such that both [Plaintiffs] lost their eligibility for lifetime health insurance coverage, under the [Plan] because of Anheuser's breach of the CBA. (Dkt. 2, ¶ 13). Consideration of the Plan in this case appears to be limited to damage calculation considerations if Plaintiffs prevail.  As Plaintiffs stated, " [Mr. Bullard] is simply seeking damages under a state law cause of action, and claiming as part of his damages, the losses that he and his wife have suffered, including loss of their health insurance." (Dkt. 10 at  p. 3).  The Fifth Circuit found in Perkins v. Time Insurance Co., 898 F.2d 470, 473  (5th Cir.), that ERISA does not preempt state law claims that do not affect relations among the principal ERISA entities: the employer, the plan fiduciaries, the plan, and the beneficiaries.  The District Court in the Northern District of Texas has also stated that, "When a claim does not arise out of the parties' ERISA relationship, but rather out of the employee-employer relationship, the claim does not "relate to" an ERISA plan.  Gibson v. Wyatt Cafeterias, 782 F. Supp 331, 335 (N.D. Tex. 1992).

Mr. Bullard is not seeking to recover benefits due or to clarify rights under the Plan, thus ERISA considerations in this case are limited to damage valuation. As the court noted in Morningstar v. Meijer, Inc., 662 F. Supp. 555, 556 (E.D. Mich. 1987):

> Plaintiff seeks the value of employment rather than 'benefits.'  One element of valuing this employment will involve the valuation of fringe benefits. . . . The most likely manner of valuation will be to determine what it would cost the plaintiff to purchase substantially similar insurance . . . No legal construction of the plan would likely occur because the trier of fact . . .would be placing a

dollar value on the fringe benefits. . . . Suits over lost employment are brought against the employers and should have no direct bearing on any aspect of plan administration.

Anheuser's reliance on a case such as <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133 (1990) as grounds for ERISA preemption is misplaced.  In <u>Ingersoll-Rand</u> the wrongful discharge claim was preempted because it required the plaintiff to prove that "an ERISA plan exists and the employer had a [benefit]-defeating motive in terminating the employment." <u>Ingersoll-Rand</u>, 498 U.S. at 139-40. In this case that factor is not present.

**LMRA**

Anheuser claims that Count II is preempted by the LMRA.[1]  Anheuser is correct that Section 301(a) of the LMRA grants exclusive jurisdiction to federal courts to adjudicate employment disputes involving CBAs so that uniform federal law, fashioned from national labor law, can provide the substantive law that applies in a Section 301(a) suit.

Essentially, Section 301(a) of the LMRA provides the foundation for the preemption doctrine that the Supreme Court concisely summarized in <u>Lingle v. Norge Division of Magic Chef, Inc.</u>, 486 U.S. 399, 405-406 (1988):

> If the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles -  necessarily uniform throughout the nation - must be employed to resolve the dispute.

---

[1]  Section 301(a) of the LMRA provides that:

> Suits or violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The Supreme Court further stated that a state law claim is preempted by § 301 of the LMRA if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract," or, stated another way, "when resolution of a state-law claim is substantially dependant upon the terms of an agreement made between the parties in a labor contract," the state-law claim has been preempted." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).

In the Lingle case, the Supreme Court found that § 301 of the LMRA did not preempt the state law retaliatory discharge claim because that state law claim involved purely factual questions. Following Lingle, courts in various circuits have held that state anti-discrimination laws are not preempted by § 301 of the LMRA.  For example, in Laresca v. AT&T, 161 F.Supp.2d 323, 331 (2001), the court stated that "reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms."  However, in contrast, in Vines v. Sloss Indus. Corp, 1996 WL 806682 (N.D. Ala. Nov. 25, 1996), the parties disputed whether the plaintiff had, within the meaning of the CBA, "returned to work" such that the plaintiff had retained seniority and the right to return to his job.   In Vines, the court concluded that the plaintiff's retaliation claim was preempted by § 301 of the LMRA because it would involve a "substantial issue of construction and operation of the CBA."  The essential question before this Court is whether this case should follow Lingle or Vines.

In order to make this determination, the proper mode of analysis is for the Court to examine the elements of the state law claim to see if any of those require interpretation of the CBA.  See Vines v. Sloss Indus. Corp, 1996 WL 806682 at *3.  Under Fla. Stat. § 440.205 a plaintiff must show that he (1) engaged in statutorily protected activity, (2) an adverse employment action

9

occurred, and (3) the adverse action was causally related to the plaintiff's protected activities.  See Humphrey v. Sears, Roebuck, & Co., 192 F. Supp. 2d 1371, 1374 (S.D. Fla. 2002).

In this case, unlike most retaliation cases in which the employee is terminated from current employment, Mr. Bullard is alleging that Anheuser retaliated against him by refusing to return him to work after he filed workers' compensation claims.  As in Vines, the first prong of the retaliation case, engaging in statutorily protected activity, presents purely factual issues and does not implicate the CBA.   However, the second prong, the "adverse" employment action, in this case the failure to return Mr. Bullard to work, as well as " the causation element of plaintiff's claim will require interpretation of the CBA."  Vines, 1996 WL 806682 at * 4.

This is not a case in which Anheuser will merely be referring to the CBA as part of its defense.  Rather, this is a case in which the Court must determine Mr. Bullard's right to return to work. The Amended Complaint clearly reads that Anheuser "discharged, failed to rehire, intimidated and coerced [Mr. Bullard] by reason of his valid claim for compensation or attempt to claim compensation under the workers' compensation law, in violation of Section 440.205, Florida Statutes, by . . . failing to return [Mr. Bullard] to light duty work after January 16, 2002. (Dkt. 2, ¶ 30).  Determination of Mr. Bullard's right to "return to work" would require a court to analyze certain provisions contained in the CBA to determine if Mr. Bullard was, in fact, able to "return to work."  This analysis includes, but is not necessarily limited to, Articles 3 (Seniority), particularly §§ 8 (Loss of Seniority) and 10 (Inter-plant Transfer); 24 (Inter-department Transfer); 28 (Physical Examination); and, 43 (§ 7) (Inter-brewery transfer).  Thus, Plaintiffs' claim is now converted into a federal claim under § 301.

Plaintiffs' claim cannot be evaluated by the Court without further information from Plaintiffs. Plaintiffs have provided the Court with no evidence that Mr. Bullard exhausted his remedies under the CBA save for a blanket statement in the Amended Complaint that reads "[a]ll conditions precedent to the maintenance of this action have occurred, have been satisfied or have been waived." (Dkt. 2, ¶ 14).  Accepting this statement as true, as the Court must, means that Plaintiffs now have a § 301 claim pending.  In a footnote to its Motion, Anheuser claims that even if converted to a federal claim, Plaintiffs' LMRA claim cannot proceed because Mr. Bullard failed to adhere to the grievance procedures set forth in Article 8 of the CBA and that he failed to file his case within the six (6) month statute of limitations set forth in § 301 of the LMRA.  (Dkt. 4 at p. 15 n.5).  If Anheuser thought that this was an important and valid point, it should have included it in the body of the Motion.

Because the Court has determined that Count II has been converted to a federal claim analysis of  Anheuser's argument that Count II fails to state a cause of action for workers' compensation retaliation under Fla. Stat. § 440.205 is unnecessary at this stage.  Plaintiffs must first provide the Court with evidence that they adhered to the grievance procedures set forth in Article 8 of the CBA and that they filed their case within the six (6) month statute of limitations set forth in § 301 of the LMRA.  Having prevailed on the issue of LMRA preemption and having devoted the bulk of their Reply to addressing this claim, Anheuser cannot now be heard to complain within the same motion that Plaintiffs' Count II claim is not cognizable.  Further, Anheuser is reminded that at the motion to dismiss stage, this Court is required to accept all of Plaintiffs' well-pleaded facts as true, and all reasonable inferences are to be construed in the light most favorable to Plaintiffs. While the Complaint is not a model of clarity, it provides enough "reasonable inferences" that

Anheuser's alleged failure to return Mr. Bullard to work may constitute actual discharge for Count II to have survived Anheuser's claims.

**IV.     Conclusion**

Accordingly, upon due consideration, it is hereby **ORDERED** and **ADJUDGED** that the Motion (Dkt. 4) is **GRANTED IN PART** to the extent that the Court finds § 301 preempts and **DENIED IN PART** in accordance with the above.

Because Plaintiffs' remaining claim is preempted by the LMRA, Plaintiff has twenty (20) days from the date of this Order to file an Amended Complaint demonstrating that they filed this case within the six (6) month statute of limitations set forth in § 301 of the LMRA..   If Plaintiffs fail to file the Amended Complaint within the time allotted, the case will be dismissed with prejudice without further notification from the Court.

**DONE AND ORDERED** in Chambers at Jacksonville, Florida this 11th day of May 2007.

JOHN H. MOORE II
United States District Judge

opies to:        Counsel of Record